Jenaro **FERRER** Lopez, in representation of his minor son, Andres Ferrer Cordero, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. No. 9581.

United States District Court
D. Puerto Rico.

June 4, 1958.

---

F. Ponsa Feliu and Baltazar Elias, San Juan, P. R., for plaintiff.

Francisco A. Gil, Jr., U. S. Atty., San Juan, P. R., for defendant.

DELEHANT, District Judge.

On May 28, 1958 trial was had to the court, without a jury, of this action brought under the Federal Tort Claims statute, 28 U.S.C. § 1346. Plaintiff introduced his evidence and rested. The evidence included a certificate of birth of Andres Ferrer Cordero, reports, in lieu of personal testimony by two physicians dealing with his injuries and the consequences thereof, a hand hammer with wood handle and metallic head, a photograph reflecting what appear and were represented, to be residual elements of an exploded device, and the oral testimony of Andres Ferrer Cordero and one Alfredo Archilla Guenard.

Upon the rest of plaintiff, defendant moved orally for the dismissal of the action for want of proof adequate to sustain a judgment for plaintiff and against defendant. The court, thereupon, granted and sustained that motion and directed the entry of judgment in favor of defendant and against plaintiff, dismissing the action, and taxing costs against the plaintiff.

The court's oral discussion, by way of the announcement of its ruling and judgment, was necessarily brief and inadequate. But it was then indicated that a memorandum would shortly be prepared and filed which would somewhat more precisely declare the ground of the court's action. This filing is made chiefly to serve that purpose.

The plaintiff, in his complaint, alleges that he is the father of Andres Ferrer Cordero, a minor and closes with a prayer for judgment against defendant in the sum of $30,000, plus costs and attorney's fees. The heart of the complaint is its third numbered paragraph which sets out in full the basis on which it rests. It is copied verbatim as follows:

"On a date prior to January 3, 1955, employee (sic) of defendant, while acting within the scope of their (sic) employment, negligently left abandoned on Insular Road No. 2, near the city of Aguadilla, a device of an explosive nature, to wit, an anti-aircraft missile or projectile, which upon being found and handled by plaintiff's son, exploded and caused him serious bodily injuries, great pain and mental anguish".

Answering, defendant pleads its unawareness touching plaintiff's status as father of Andres Ferrer Cordero; admits that Andres Ferrer Cordero, while hammering a certain device at his home on January 3, 1955, caused an explosion of the device with his resultant injury in a manner and to an extent unknown to defendant; otherwise denies the allegations of the complaint; and by way of

affirmative defenses, avers, first—that negligence of Andres Ferrer Cordero was the sole and proximate cause of his injuries, and secondly, that, even assuming negligence of defendant, such negligence of Andres Ferrer Cordero contributed to the proximate causation of the explosion and his injuries.

It is now announced by the court that the proof in plaintiff's behalf fails utterly to show that defendant, or any employee of defendant, acting within the scope of his employment, or otherwise, was guilty of any act or omission constituting negligence, which was the proximate cause of the explosion or of the injuries to Andres Ferrer Cordero. In reaching that conclusion the court, as it is persuaded it must at this juncture in the case, has accepted all of the evidence adduced by plaintiff as true and has construed that evidence most favorably to plaintiff.

From the case as thus made out, appraised with all reasonable liberality in plaintiff's favor, the facts now recalled may be considered to be supported by the proofs.

Andres Ferrer Cordero, the legitimate son of plaintiff was born on November 10, 1938, was, therefore, sixteen years, one month, twenty four days of age on January 3, 1955. Up to that time he had attended school, and was enrolled in the fifth grade in school at Aguadilla, Puerto Rico. He had been born and had always lived in his parental home in that city. In appearance he is a normal youth and reasonably alert mentally. For about six months before January 3, 1955, he had been engaged personally but on an occasional basis, in the collection and assembling of salable scrap materials. These included empty bottles and metals in small quantities, notably copper and aluminum. Though not exclusively, he frequently procured such materials through searching for them along the roadside in the Aguadilla neighborhood. And it was his practice, once such materials were collected in fairly small quantities, to sell them, as a means of earning minor sums of money.

In midafternoon of January 3, 1955, accompanied by his brother, Francisco Ferrer Cordero, he was engaged in a search for salable scrap materials; in the course of which he was walking along the Cuesta Nueva highway, a part of public highway No. 2, leading to Aguadilla. Thus engaged, he found along the side of the road a metallic object or device, which he then picked up and took to, and placed in a shed at, his home, and near to his house, in Aguadilla, where he intended later to examine it with a view to determining whether, and to what extent, it contained marketable materials. The precise spot on the roadside where the device was so found was not exactly defined. Andres Ferrer Cordero, as a witness estimated the spot as being three feet from the traveled road. But, on further examination, and through illustration, he agreed that it was at a distance which the court considers to be from five to six feet from the traveled road; and he also declared that it was found at a point whose elevation was about three feet below that of the roadway. Thus, the spot was about five or six feet away from the traveled portion, and three feet below the level of the highway, and was located on the descending shoulder of the highway.

Having taken the device to the shed at his home, Andres Ferrer Cordero next spent considerable time during the rest of the afternoon in some errands. But at about 6 o'clock that afternoon he returned to his home. He then proceeded to examine the device for the purpose of determining its content of salable metal and the removal from it of any unsalable material. In that effort he used a magnet, a knife and a hammer. As he started to make the examination he ordered his sister who was present to go upstairs and into the family house. His mother, being at the home, observed him and told him not to handle the device. But he did examine

and operate upon it. He removed from it two small metallic screws. He then proceeded to strike it with the metallic hammer, an ordinary hand tool of that character. Holding the device in his left hand, he first struck it by one blow with the hammer, wielded by his right hand, without any notable incident. Then, he similarly struck it by another and second blow. With the second blow the device exploded and shattered his left hand in which it was being held. Besides his left hand, his chest, a considerable portion in length of his left leg, the left side of his neck, and an area near his left eye sustained injuries from the explosion. So far, however, as the evidence before the court discloses, the injuries, with the exception of those to the left hand and forearm, though temporarily painful, were not permanently disabling. That, of course, is not true of the left hand and forearm. The injury to that portion of his body was both painful and permanently dismembering, disfiguring, and disabling.

In proximate consequence of the explosion, Andres Ferrer Cordero underwent the following hospitalization and medication and surgical treatment:

(a) early confinement and treatment in the hospital at Aguadilla for about a month and a half, during which his left hand was amputated;

(b) a second period of eighteen days more or less, whose dates are not precisely shown, during which he was again confined and treated in the hospital, at which time some not clearly defined surgery was performed on his chest and a metal fragment was surgically extracted;

(c) a third period of about eight days, commencing about December 8, 1955 during which he was once more confined and treated in the hospital, and further amputative surgery was executed on his left arm.

Besides the amputation already mentioned, he also sustained some permanent, but not disabling, scarring of parts of his body; and some minor metallic fragments remain in portions of his body, which, however, are not shown to give rise to any pain or disability.

On and prior to January 3, 1955 there was and had been a United States military base at Aguadilla. Occasionally, but not frequently, army trucks carrying troops had traveled along public highway No. 2, beside which the device already mentioned was found. But there is no evidence before the court from which it may find when, before January 3, 1955, any such movement or movements occurred, how large numerically any such movement was, or, apart from troops in motor trucks, what items or materials were transported in or during any such movement. Nor is there any evidence before the court from which it may supportably be concluded that any military equipment or device, particularly the one which was found, and which exploded, on January 3, 1955, was cast or deposited along the roadside in the course of any of those journeys. There is no evidence that any military ordnance was carried in or by any such convoy or that, in their passages, the convoys or any of them left any objects along the roadside.

The witness, Alfredo Archilla Guenard, by education and profession, is an attorney at law, and is presently Attorney for the Supreme Court of the Commonwealth of Puerto Rico. In 1955 he was District Attorney in the Superior Court at Aguadilla. In that capacity he participated in an official investigation of the explosion already mentioned. However, during the recent, or second, world war he was in the military service, and, in the course of such service, was assigned to the study of fire control in the anti aircraft field, in which he took extended courses, designed, in part, to familiarize him with anti aircraft instruments, devices and projectiles. It was really as an expert witness with some qualifications in that field, rooted in wartime experience, and not as a lawyer, that he testified.

And for the purposes of this case, and in the consideration of the motion to dismiss, to which this memorandum responds, he may be considered to have

testified that the fragments of the device that exploded on January 3, 1955, so far as they were collected and preserved and physically exhibited to, and examined by him, and also as they were reflected in a photograph which is an exhibit in the case, appeared to be fragments of a fuse of an anti aircraft shell; and that on the outside of one of the fragments were cut the letters, "U. S. A." He also testified that he knew of the existence of the United States Army's base at Aguadilla, but that he does not know whether it conducted any anti aircraft operations at any time.

From the evidence before the court it clearly appears that, as a direct, and reasonably necessary, result of the explosion of the device so found on January 3, 1955, Andres Ferrer Cordero sustained severe, painful, and, in part, permanent and disabling physical injuries. Principal among these was the explosive mangling, with the resultant amputation, through two successive surgical operations, of his left hand. And for one approaching a mature life equipped only for manual labor, the damage ensuing from such a loss is inevitably substantial. With equal certainty it is established that from the same cause, he was subjected to considerable conscious pain and suffering. And if the financial evaluation of those two elements of plaintiff's claim were reached the record is probably adequate to enable the court to arrive at a supportable figure for them. It is also possible, yet not directly or clearly shown that on account of his injuries, obligations may have been incurred for medical, surgical, nursing and hospital care. However, in respect of that possible item of damage and its component parts, it is extremely doubtful whether there is in the evidence sufficient proof either of the several features of service that, with reasonable necessity, were bestowed upon him, or of the amounts, if any, incurred therefor, or of the fair and reasonable compensation for them to support a financial evaluation of them.

But, as regards them also the court does not reach the consideration of value.

For there is a complete destitution of proof fastening accountability for the misadventure on the defendant. As was said in the recent, and fairly comparable case of Maisonet v. United States of America, D.C.N.Y., 159 F. Supp. 869, 870,

"The Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), provides that a claimant thereunder must prove negligence of an employee of this Government while acting within the scope of his employment, under circumstances where the United States, if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

And, as in the cited case, so here, there is a fatal failure of that statutorily imperative proof. The plaintiff, indeed, did *allege* the negligence of an employee of the United States while acting within the scope of such employment as the proximate cause of the explosion and of his injuries. See quotation, supra, of paragraph 3 of complaint. He simply and completely *failed to prove it.*

In liberal acceptance of the testimony of Alfredo Archilla Guenard, the court considers that there is before it some evidence that the device which exploded was all, or a part, of a fuse of an anti aircraft shell comparable in type to that used, or recently used, by the United States Army, of which a marking in a fragment supports the conclusion that it was formerly part of an item of United States Army Ordnance.

But the evidence goes no farther. It neither establishes, nor provides factual detail from which it may fairly or reasonably be concluded, who, by his act. or omission, placed the device, or caused it to be placed, on the shoulder of the highway where it was later found; or when it was placed there; or that the person so placing it, or causing it to be placed, was an employee in any capacity of the United States of Ameri-

774

ca; or, if he was an employee of the United States that he was acting within the scope of his employment; or that in such action or omission he was negligent in any respect or particular. In short, there is a complete failure of evidence imposing on the defendant any responsibility for the presence of the instrument in the spot where the youth found it. At best, the court could reach a conclusion favorable to plaintiff only by a guess, and by an uninformed and factually unsupported guess, at that. It will not thus pervert its fact finding function. And that is the actual ground for the ruling herein announced.

It may be acknowledged that, if the court were confronted with the necessity of passing on the question, it would incline strongly to the view that, irrespective of the manner in which the device was left by the roadside, the proximate cause of its explosion was not its placement or abandonment there, but rather the fracturing manhandling that Andres Ferrer Cordero administered to it within about three hours after he picked it up. He was no curious little boy but a sturdy sixteen year old youth, who, for six months had engaged, in a slender and narrow way, in the processing and sale of small scrap metal items. He had some awareness of the peril of handling vagrant devices and appliances. Passing over his dismissal from the shed of his sister and his direction by his mother to leave the device alone, both of which he endeavored as a witness to explain away, he knew that he was undertaking a fairly complex task for which he needed, and provided himself with tools. And then he wielded the hammer on the appliance. That, as it would seem to the court, presents the proximate cause of the explosion. But, let it be repeated, the decision here made rests on the failure of plaintiff to fasten liability on the defendant, rather than on his son's affirmative and causative negligence.

The clerk will transmit forthwith by United States mail copies of this memorandum to counsel in the action.